## FARMERS' LOAN & TRUST CO. v. SOUTHERN ENGINEERING CO.

(Circuit Court of Appeals, Fourth Circuit. November 7, 1922.)

No. 2014.

Sales ☞182(1)—Question of breach held one for jury.

 In an action for breach of a contract by which plaintiff was to furnish steel and other materials for a building, the questions of breach of the contract by defendant and of waiver of such breach by plaintiff *held* properly submitted to the jury.

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Henry H. Watkins, Judge.

Action at law by the Southern Engineering Company against the Farmers' Loan & Trust Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

William G. Sirrine, of Greenville, S. C., for plaintiff in error.

E. R. Preston, of Charlotte, N. C., and Thomas F. McDow, of York, S. C., for defendant in error.

KNAPP, Circuit Judge. In the court below defendant in error was plaintiff and plaintiff in error defendant; they so will be referred to in this opinion.

Under date of April 22, 1919, these parties entered into contract in writing by which plaintiff agreed to furnish the structural steel and other materials for a bank building, seven stories in height, to be erected by defendant in the city of Greenville, S. C. The form of the contract was a proposal by plaintiff and its acceptance by defendant. A supplemental contract of like form, under date of July 18, 1919, provided for a 12-story building at a named increase of price. The terms of these contracts are not in dispute, but each party alleges a breach by the other.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Upon acceptance of its April proposal plaintiff at once began to prepare for performance. Among other things it placed an order with the Bethlehem Steel Company, which that company executed, for certain steel parts which had to be specially fabricated. About the 1st of June it delivered material of the value of $900 and upwards (which defendant paid for in the following October) and for nearly three months thereafter continued its preparations for doing the work. In short, so far as appears, and as is virtually conceded, plaintiff was able and willing to furnish all the materials contracted for and meet in full its obligations within the specified time, and would have done so, if defendant had not otherwise ordered. The latter, on August 23d, sent the former the following telegram:

"Stop all work on steel contract and under no circumstances allow any shipments made, more extensive plans contemplated."

Upon receipt of this message plaintiff stopped the work it had begun, and which then was well advanced towards completion, and set about getting released from contracts which it had made with other concerns for some of the materials to be used in the construction of defendant's building. In this it was successful, except in the case of Bethlehem Steel Company, to which plaintiff later was obliged to pay the sum of $499.32, because the steel ordered of it had been cut according to directions and was valuable only as scrap.

Following the suspension of work by plaintiff there was considerable correspondence between the parties, extending to July, 1920, to which further reference presently will be made, and numerous conversations by telephone and in personal interviews. Subsequently plaintiff brought this suit, claiming damages for breach of contract to the amount of $4,000, namely, as its proofs disclosed, $1,500 for actual cost of drawings, engineering work, and the like for the building originally planned, $499.32 paid Bethlehem Steel Company, and $2,000 loss of profits. The answer denies any breach of the contract by defendant, and alleges, on the contrary, a breach thereof by plaintiff, to the damage of defendant in the sum of $5,000, for which it sets up a counterclaim. The trial below resulted in a verdict for plaintiff for $2,000, and defendant brings the case here on writ of error.

The argument for reversal rests on two propositions, the first of which is thus stated:

"Where there is a written contract between parties for the sale of steel, providing that the vendor shall put the steel upon the cars, and when delivered by carrier at destination put it in place, no testimony is admissible to show damages until it is first made to appear to the court that the vendor has fully complied with his contract, unless it appears that the purchaser has made statements or committed acts amounting to a renunciation of the contract."

The correctness of this proposition is not questioned, but the case in hand clearly seems to fall within the stated exception. The language of the telegram above quoted is emphatic and unequivocal. In our judgment it was "a renunciation of the contract," for it means nothing less than a refusal to permit performance. And the peremptory order, "under no circumstance allow any shipments made," was never withdrawn or modified. The correspondence shows that plaintiff

was all along desirous of furnishing steel for whatever sized building defendant might decide to erect, but at no time did the latter make any request for the delivery of materials, under the contract or otherwise, or indicate any willingness to receive them. On the contrary, defendant was continually excusing its delay on the ground that it had not been able to obtain the additional land required for a larger structure. As late as December 4th its president wrote that—

"We have been endeavoring to close up some matters here in order to be in position to decide definitely whether or not we could put up an office building at this time. * * * I think that we shall be glad to have some definite information along this line within the next week or ten days."

And when defendant was finally ready to proceed, instead of calling upon plaintiff to furnish the material under its contract, it invited proposals for additional steel from various concerns, including plaintiff, and made the needful purchase from a lower bidder. In short, taking into account the whole correspondence—too lengthy to review in detail—together with the oral testimony, which was more or less conflicting, we think defendant cannot justly complain because the trial court submitted to the jury the question whether or not it had breached its contract.

The other and kindred proposition of defendant is this:

"From the correspondence and undisputed facts there arises a question of law for the court whether the purchaser has renounced the contract. From the testimony but one inference can be drawn, viz. that the purchaser did not breach the contract, but only sought to change the specifications."

What already has been said applies as well to this contention. It of course is true that where the facts are not in dispute, or where all the evidence is in writing and unambiguous, it is for the court to decide whether or not there has been a breach of the contract in controversy. But plainly, as appears to us, this is not such a case. We cannot agree that the telegram of August 23d "only sought to change the specifications." It was an explicit order to stop work, and for the reason, as the event showed, that the materials covered by the contract would not answer the requirements of the larger building which defendant had in contemplation. It therefore was in effect a refusal by defendant to carry out its part of the agreement, and as such gave to plaintiff an immediate right of action. Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. The real question is whether plaintiff waived its right, and that depends in turn upon the inference to be drawn from the subsequent correspondence between the parties and the testimony of their respective officers. That different conclusions reasonably might be reached seems to us not doubtful. Not only do the letters disclose conflicting views, understandings and asserted intentions, but opposing witnesses are in clear contradiction. For example, plaintiff's president says:

"Between August 23, 1919, and December 1, 1919, the defendant never notified us or consented to our proceeding with the contract, but we were put off from day to day."

Against this defendant's president says:

"I did not at any time over the long distance telephone or in conversation with him in person ever tell him or indicate to him that I wanted to cancel our contract for the steel. On the contrary, we were very anxious to maintain the order, and I told him so, and I told him that we would give him an additional order for steel, which was all satisfactory to him."

Other instances might be cited, but the foregoing will suffice. And we deem it enough to add that in our judgment the question of waiver, and consequent right of plaintiff to recover, became a question of fact which was properly submitted to the jury.

The assignments of error based on the refusal of requested instructions present in another form substantially the same questions as those already considered and therefore do not require separate discussion. The denial of the motion for a new trial is not reviewable.

Affirmed.